UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:09-CV-183-F

| | |
|---|---|
| CHRIS W. TAYLOR, for himself and for all others similarly situated, et al., Plaintiffs, | ) ) ) ) |
| v. | )    ORDER |
| LEE W. BETTIS, Jr., Esq., et al., Defendants. | ) ) ) ) |

This matter is before the court following the briefing by Defendants Lee W. Bettis, Jr., Pat Leigh Pittman, Joanne K. Partin, Robert L. Emanuel, Stephen A. Dunn, Raymond E. Dunn, Jr., Emanuel & Dunn, PLLC, and Bettis Dunn & Dunn (collectively, the "E&D Defendants" or "Defendants E&D") and Plaintiffs Brenda Beasley, Dorman Beasley, William G. Harrison, Cathy Horton Hunt, Linda Sheryl Lucas, Sharon Southwood, and Chris W. Taylor (collectively, "Plaintiffs") on the impact, if any, of the North Carolina Supreme Court's opinion on *Variety Wholesalers, Inc. v. Salem Logistics Traffic Services, LLC*, 365 N.C. 520, 723 S.E.2d 744 (2012) on the Plaintiff's asserted conversion and constructive trust claims. For the reasons stated below, those claims against the E&D Defendants are DISMISSED, and this action is consolidated with *Southwood v. The Credit Card Solution*, 7:09-CV-81-F.

## I. FACTUAL AND PROCEDURAL HISTORY

One of the Plaintiffs in this potential class action, Sharon Southwood, is also the named Plaintiff in *Southwood v. The Credit Card Solution*, 7:09-CV-81-F ("the *Southwood* action"), also

pending before the undersigned. In that action, Southwood alleges, *inter alia*, that Defendant CCDN, LLC, a limited liability company organized under Nevada law, along with other associated entities, ran a debt elimination and credit repair scheme which defrauded her and others. Southwood, and several other Plaintiffs, filed this action several months after the *Southwood* action was removed to this court, alleging claims against many of the same individuals and entities named as defendants in the *Southwood* action. Additional defendants were also named in this action, including several attorneys and law firms which have represented CCDN, LLC, and/or its affiliates, principals, or agents in litigation.

The Allegations in the Amended Complaint are as follows: Defendants CCDN, LLC and other associated entities[1] (collectively, "CCDN") ran a debt elimination and credit repair scheme. Amend. Compl. [DE-23] ¶¶ 1, 60. According to Plaintiffs, CCDN–and the entities and individuals it contracted with to market its "product"–promoted the credit repair scheme and solicited business through several websites and videos posted on the websites and unrelated video-sharing websites. *Id.* ¶¶ 102, 106-09. One of CCDN's top marketers was The Credit Card Solution ("TCCS"), a sole proprietorship of Defendant Robert Mitchell Lindsey, who contracted with R.K. Lock & Associates to sell CCDN's program. *Id.* ¶ 116. In the scheme, as represented by Plaintiffs, CCDN (or the individual marketing CCDN's program) required an advance payment to enroll in their "process." *Id.* ¶ 173. The CCDN marketer then required an enrollee to execute a power of attorney authorizing CCDN to "prepare and sign all documents written with the intent of researching, challenging,

---

[1] The additional entities include Defendant Legal Debt Cure, LLC, a limited liability company owned by Individual Defendants Robert K. Lock, Colleen Lock, and Philip Manger, *see* Amend. Compl. [DE-23] ¶ 61; Defendant R. K. Lock & Associates, the sole proprietorship of Robert K. Lock, *see id.* ¶ 62.

2

negotiating, and otherwise corresponding with creditors, debt buyers, debt collectors, lw[sic] firms, credit reporting bureaus, and government agencies" with respect to specified accounts. *Id.* ¶ 175. Plaintiffs allege that CCDN then sent letters to enrollees' creditors demanding validation of enrollees' accounts, and asking the creditors to execute an affidavit drafted by CCDN that gave certain "assurances" regarding the enrollees' accounts. *Id.* ¶¶ 176-77. Plaintiffs also allege that CCDN informs enrollees they then do not have to repay debts. *Id.* ¶ 187. According to the Plaintiffs, enrollees are then encouraged to "provoke [] and allow creditors and collectors to abuse [enrollees] as much as possible in order to generate enough damages under fair debt collection law to offset the debt." *Id.* ¶ 196.

All of the Plaintiffs allege that they paid specific amounts to marketers of the CCDN program. *Id.* ¶ 227 (Plaintiff Cathy Horton Hunt paid $2,500.00 to Lindsey), ¶ 267 (Plaintiff Linda Sheryl Lucas paid Federal Debt Relief System at least $8,000.00), ¶ 303 (Plaintiff William G. Harrison paid the Aegis Corporation $4,200.00), ¶ 344 (Plaintiff Southwood paid Lindsey $5,600.00), ¶ 387 (Plaintiff Chris W. Taylor paid $4,500.00 to TCCS), ¶ 468 (Plaintiffs Dorman and Brenda Beasley sent a $2,500.00 check to Everett Smith). Plaintiffs allege that some of those marketers who received their payment converted unspecified amounts to the marketer's own use and remitted the remainder, if any, to CCDN. *Id.* ¶ 229 (Defendant Lindsey converted part of Plaintiff Hunt's payment), ¶ 268 (alleging some or all of the money Plaintiff Lucas paid went to the benefit of CCDN), ¶ 303 (alleging that Defendant Aegis converted an unspecified amount to its own use and remitted the remainder to CCDN), ¶ 345 (alleging that Defendant Lindsey "kept part or all of [Plaintiff Southwood's payment] for himself, and transmitted the rest (if any) across state lines to CCDN").

3

Plaintiffs Harrison, Hunt, Lucas and Southwood allege that after they became dissatisfied with CCDN, they hired counsel, Christopher Livingston ("Plaintiffs' Counsel" or "Livingston"), "on a contingent basis to try to recover some measure of justice from CCDN" and various other entities and individuals. Am. Compl. ¶ 489 [DE-23]. On September 12, 2008, Livingston "commenced *Hunt v. R.K. Lock & Associates*, 08 CVD 883, *Lucas v. R.K. Lock & Associates*, 08 CVD 884, and *Harrison v. Aegis Corp.*, 08 CVD 885 in Bladen County District Court." *Id.* ¶ 492.

"In or around late November 2008, CCDN Defendants in file numbers 08 CVD 883, 884 and 885 retained E&D Defendants by paying a fee or retainer from the money they criminally derived from Plaintiffs." *Id.* ¶ 512. According to Plaintiffs, "[t]hough E&D 's clients may not have satisfied their bill in full, neither E&D Defendants nor any sensible defense lawyer would remain on such a case for over a year without actually receiving a very substantial amount of money, and if they were not getting paid, E&D Defendants would have long ago resigned from the representation." *Id.* ¶ 512. Plaintiffs assert "Defendants Pittman, Partin, Emmanuel, Steve Dunn and Raymond Dunn, by virtue of their positions as owners and managers of Emmanuel & Dunn, PLLC, and as supervisors of their employee and agent Defendant Bettis, knew that (or their suspicions were aroused by what they learned during the representation, but then they failed to make further inquiry as to whether) their client's sole business and sole source of revenue, proceeds, profit and earnings was and is a combination of wire fraud, mail fraud, bank fraud, obtaining property by false pretenses, and money laundering, and that it as wrong and illegal to accept money so derived." *Id.* ¶ 513.

While those three cases were pending, Plaintiff Sharon Southwood "commenced *Southwood v. The Credit Card Solution*, 09 CVS 19 in Bladen County Superior Court, by means of a verified complaint seeking relief for a nationwide class against TCCS, CCDN, Mr. and Mrs. Lock, Mr.

4

Manger, Mr. Lindsey, and CCDN, LLC." *Id.* ¶ 544. "Mr. Lindsey immediately retained Mr. Bettis to represent him and TCCS." *Id.* ¶ 547. Plaintiffs allege that "Mr. Lindsey or CCDN or both paid E&D Defendants a retainer out of criminally derived property that they defrauded from Plaintiffs." *Id.* ¶ 548. Plaintiff also allege that around April 2009, "Steve Dunn began accepting money that he knew was criminally derived property." *Id.* ¶ 633.

In an order filed on September 30, 2013 [DE-117], the court, *inter alia*, allowed the E&D Defendants' Motion for Judgment on the Pleadings [DE-98] in part and dismissed all of Plaintiffs' claims against those defendants, with the exception for Plaintiff's claims for conversion and constructive trust. As to those claims, the court directed Plaintiffs and the E&D Defendants to submit briefing on the impact of the *Variety Wholesalers* case. The parties have complied.

## II. E&D'S MOTION FOR JUDGMENT ON THE PLEADINGS

The E&D Defendants have moved, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings, arguing that the pleadings demonstrate that Plaintiffs have failed to state a claim for which relief can be granted.[2]

Plaintiffs allege that Defendants "wrongfully deprived Plaintiffs of their property by means of mail and wire fraud and false pretenses, or by receiving it from other Defendants who so obtained it from Plaintiffs, and then willfully continued to deprive Plaintiffs of their property by means including but not limited to willfully keeping Plaintiff's property for their own use instead of giving it back to Plaintiffs," rendering all the Defendants liable for conversion. Compl. [DE-23] ¶ 758. As this court already has observed, there are no factual allegations

---

[2] In the September 30, 2013 Order [DE-117], the court set forth the standard of review applicable to Rule 12(c) claims. The same standard remains applicable.

5

sufficient to support the idea that any of the E&D Defendants participated in mail or wire fraud or the tort of false pretenses, or that they conspired to do so. Consequently, the court must examine whether the remainder of Plaintiffs' allegation–namely, that E&D Defendants were paid by parties to defend them in civil actions and that said parties paid the E&D Defendants with money wrongfully obtained from them–is sufficient to state a claim under North Carolina law.

After receiving the briefing from the parties, the court concludes that Plaintiffs have failed to state a claim against the E&D Defendants. As the court previously has recounted, the North Carolina Supreme Court has stated that "[t]he tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to one another, to the alteration of their condition or the exclusion of an owner's rights." *Variety Wholesalers,* 365 N.C. at 523, 723 S.E.2d at 747 (quoting *Peed v. Burleson's Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)) (alteration in original). Accordingly, there are "two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Id.* (citing *Gadson v. Toney*, 69 N.C. App. 244, 246, 316 S.E.2d 320, 321-22 (1984)).

Although money may be the subject of an action for conversion, generally such a claim is actionable "*only* when it is capable of being identified and described." *Variety Wholesalers*, 365 N.C. 528, 723 S.E.2d at 529 (quoting *Alderman v. Inmar Enters., Inc.*, 201 F. Supp. 2d 532, 548 (M.D.N.C. 2002)). Recently the North Carolina Supreme Court, in *Variety Wholesalers*, observed that the old rules for a claim of conversion, which required identification of specific bills or coins, are unworkable in our current economic system. *See Variety Wholesalers*, 365 N.C. at 528-29, 723 S.E.2d at 750 (observing that "numerous courts around the country have

6

adopted rules requiring the specific identification of a sum of money, rather than identification of particular bills or coins"). In that case, the plaintiff, Variety, contracted with a third-party, Salem, to pay and audit transportation bills incurred by the plaintiff. 365 N.C. 520, 723 S.E.2d at 744. Under the contract, Salem received all of Variety's freight bills from carriers, audited the bills, and prepared master invoices for Variety, and Variety would then pay Salem who in turn paid the carriers. Salem instructed Variety to send the amounts owed to a Wachovia bank account, where payments from other clients were also sent. Salem, however, did not tell Variety that the bank account was in fact controlled by another entity, Ark, which had made loans to Salem and used the bank account to pay off the Salem loans. Eventually, when Variety's shippers complained about not getting paid, Variety terminated the contract and filed suit against Salem to recover approximately $888,0000 it had forwarded to the bank account but which Salem had not used to pay the carriers. Variety then discovered that Ark controlled the account and demanded that Ark return the funds. Ark refused, and Salem added it as a defendant alleging claims for conversion and constructive trust. At both the trial court level and during appeals, Ark argued "[i]n effect, . . . that the moment the funds were transferred into the Wachovia account and commingled with the deposits of Salem's other customers, they ceased to be identifiable and any conversion claim must fail." *Id.* at 528, 723 S.E.2d at 750.

The North Carolina Supreme Court rejected Ark's argument, and stated that "[i]n the context of this conversion claim, we conclude that funds transferred electronically may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question." *Id.* at 529, 723 S.E.2d at 750-51. The court specifically observed that "[o]ther courts confronting this challenge have held similarly" and in a footnote,

7

cited cases from around the nation. *Id.* at 529, 723 S.E.2d at 751 n.4.[3] Importantly, the facts in *Variety*, and in each of the cases cited by the court in the footnote, involved allegations or evidence of a transfer of a specific amount of money from a plaintiff to a defendant, with the defendant taking possession of that specific, identifiable amount.

The court also rejected the argument that Variety's constructive trust claims failed because Ark and Variety did not share a fiduciary relationship. The court explained:

> A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty, or some other circumstance making it equitable for him to retain it against the claim of the beneficiary of the constructive trust.

---

[3] The footnote reads as follows:

*See, e.g., ADP Investor Commc'n Servs., Inc. v. In House Att'y Servs., Inc.,* 390 F. Supp. 2d 212, 224–25 (E.D.N.Y.2005) ("ADP alleges . . . that it seeks 'a specifically identifiable sum of money . . . sent by wire transfer from [ADP's] account with JP Morgan Chase in New York to In House's bank account at California Bank & Trust c/o ILCS.' ADP also states the exact amount of the wire transfer, $277,699.89. This Court finds then that ADP properly alleges an identifiable sum of money and therefore ADP's conversion claim does not fail as a matter of law." (second and third alterations in original)); *see also Creative Trade Group, Inc. v. Int'l Trade Alliance, Inc.,* No. 08 C 2561, 2009 WL 3713345, at *9 (N.D.Ill. Nov. 4, 2009) ("For the purposes of this motion, the court assumes the wire transfer fund, which is a specific and documented amount of money ($171,388) transferred to McGrath from an outside source (Creative's account), is sufficiently identifiable to support Creative's conversion claim."); *St. Paul Travelers Cas. & Sur. Co. of Am. v. Manley,* No. 05–cv–01195–REB–BNB, 2006 WL 3019673, at *1 n. 2 (D.Colo. Oct. 23, 2006) (unpublished order) ("It thus appears to be the consensus among courts that a claim of conversion is cognizable when it relates to a wire transfer of funds which are traceable to a specific bank account."); *Trey Inman & Assocs. v. Bank of Am.,* 306 Ga.App. 451, 458, 702 S.E.2d 711, 717 (2010) (holding that "$76,122.31 in funds that TIA disbursed to Brookchase Builders via wire transfer was specific and identifiable and therefore was a proper subject for the Bank's conversion claim"); *Mfrs. Hanover Trust Co. v. Chem. Bank,* 160 A.D.2d 113, 125, 559 N.Y.S.2d 704, 712 (1990) (holding funds identifiable where "[plaintiff] effected a wire transfer to [defendant] of a specific sum, $223,280.74, to be credited to a specific account"), *appeal denied by* 77 N.Y.2d 803, 568 N.Y.S.2d 15, 569 N.E.2d 874 (1991).

*Variety Wholesalers,* 365 N.C. at 529, 723 S.E.2d at 751 n.4.

*Id.* at 530, 723 S.E.2d at 752 (quoting *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970)) (citations omitted). Although "a fiduciary relationship, while generally the basis for constructive trust claims, [it] is not strictly required" to maintain a claim for a constructive trust. *Id.* Rather, in the absence of a fiduciary relationship, a plaintiff "faces the difficult task of proving 'some other circumstances making it inequitable' for [the defendant] to possess the [challenged] funds." *Id.* (quoting *Wilson*, 276 N.C. at 211, 171 S.E.2d at 882). The court explained that "if Ark had actual or constructive notice that Salem did not have ownership of the funds deposited in the Wachovia account, Ark's continued acceptance of those funds could be considered unconscientious or inequitable and could thus permit the imposition of a constructive trust." *Id.* The court further explained that "[t]he constructive trust issue involves a similar tracing and identification analysis as is presented in the conversion claim," and accordingly, commingling of funds would not prevent a constructive trust claim.

Here, unlike in *Variety Wholesalers*, the allegations in the Amended Complaint do not allege the transfer of a specific amount that can be traced ultimately to the E&D Defendants. To be sure, Plaintiffs set forth the specific amounts that they paid to various "middle men" in the alleged CCDN scheme. *See* Amended Compl. [DE-23] ¶¶ 227; 267; 300; 344; 387; 468. Plaintiffs then allege that some indeterminate amount–or possibly no amount at all–was then transferred to CCDN, LLC. *Id.* ¶¶ 229, 268, 303, 345, 450. After this, some indeterminate amount is alleged to have been transferred to the E&D Defendants as a fee for legal services or retainer to secure representation. *Id.* ¶¶ 511, 516. This scenario, of indeterminate amounts of Plaintiffs' money that may or may not have been transferred to CCDN and then, some unidentified portion then transferred to the E&D Defendants, differs considerably from the facts

9

in *Variety Wholesalers* and the cases cited therein where specific amounts of money were alleged to be in the defendants' possession. *See Variety Wholesalers*, 365 N.C. at 529, 723 S.E.2d at 751 (concluding that evidence of multiple wire transfers of specific sums from the plaintiff's account into a lockbox account owned and controlled by defendant may be sufficient to meet the identifiable funds requirement); *ADP Investor Commc'n Servs.*, 390 F.Supp.2d at 224-25 (concluding that plaintiff stated a claim for conversion where plaintiff mistakenly wired a specific amount to defendant's account and defendant refused to return it). Plaintiffs' allegations do not satisfy the sufficiently identifiable requirement for a conversion claim regarding money under North Carolina law, and accordingly the conversion claim is DISMISSED. Accordingly, Plaintiffs' claims for punitive damages and a constructive trust are also DISMISSED. *See New Amsterdam Cas. Co. v. Waller*, 301 F.2d 839, 842 (4th Cir. 1962) ("A constructive trust is merely a procedural device by which a court of equity may rectify certain wrongs . . . but it is not a designation of the cause of action which justifies an exercise of power.").

### III. FAILURE TO SERVE

On May, 2011 the Clerk of Court issued a Notice to Plaintiff of Failure to Make Service Within 120 Days [DE-112], informing Plaintiffs that the record did not reflect that service had been obtained upon defendants R.K. Lock & Associates; Jen Devine, Robert K. Lock, Jr.; Colleen Tomasino Lock; S. John Hagenstein; The Credit Card Solution; Robert Mitchell Lindsey; Richard D. Russ; Ernest Gregg Britt, Jr., R&G Marketing; Excell Marketing, LLC, and Tracy Webster. The Clerk of Court informed Plaintiffs that they must demonstrate good cause why service had not been obtained upon the above-referenced defendants, and the failure to do so

would result in the dismissal of their claims against these defendants without prejudice. Plaintiffs did not respond.

Accordingly, Plaintiffs' claims against R.K. Lock & Associates; Jen Devine, Robert K. Lock, Jr.; Colleen Tomasino Lock; S. John Hagenstein; The Credit Card Solution; Robert Mitchell Lindsey; Richard D. Russ; Ernest Gregg Britt, Jr., R&G Marketing; Excell Marketing, LLC, and Tracy Webster are DISMISSED without prejudice.

## IV. CONSOLIDATION

In the court's previous order, it directed the remaining parties to this action to show cause why the instant action should not be consolidated with the *Southwood* action, 7:09-CV-81-F. Plaintiffs are the only parties to have filed a response, and they indicate that they do not oppose consolidation.

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Courts have "broad discretion" to consolidate cases under Rule 42(a). *A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 933 (4th Cir.1977). Consolidation "clearly" satisfies Rule 42(a) when the claims are brought against the same party, rely on the same witnesses, allege the same misconduct, and are answered with the same defenses. *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 982 n. 2 (4th Cir.1997). Although the instant action includes some additional defendants than those named in the *Southwood* action, there is undoubtedly a common question of law and fact overlapping between the two actions.

Accordingly, the court in its discretion CONSOLIDATES cases 7:09-CV-81-F and 7:09-CV-183-F. These two actions shall proceed under one consolidated case number, 7:09-CV-81-F

11

(Consolidated Action). Each filing shall continue to reflect case numbers 7:09-CV-81-F and 7:09-CV-183-F, but shall be filed only in the consolidated action. The Clerk of Court is DIRECTED to administratively close the case file of the instant action. At the appropriate time, the instant action shall be reopened so that judgment or other proceedings may be entered therein.

## V. CONCLUSION

For the foregoing reasons, the E&D Defendants' Motion for Judgment on the Pleadings [DE-98] is ALLOWED as to the remaining claims against them in this proceeding, and therefore all claims against them are DISMISSED.

Additionally, Plaintiffs' claims against R.K. Lock & Associates; Jen Devine, Robert K. Lock, Jr.; Colleen Tomasino Lock; S. John Hagenstein; The Credit Card Solution; Robert Mitchell Lindsey; Richard D. Russ; Ernest Gregg Britt, Jr., R&G Marketing; Excell Marketing, LLC, and Tracy Webster are DISMISSED without prejudice for failure to show service.

Finally, the court in its discretion CONSOLIDATES cases 7:09-CV-81-F and 7:09-CV-183-F. These two actions shall proceed under one consolidated case number, 7:09-CV-81-F (Consolidated Action). Each filing shall continue to reflect case numbers 7:09-CV-81-F and 7:09-CV-183-F, but shall be filed only in the consolidated action. The Clerk of Court is DIRECTED to administratively close the case file of the instant action. At the appropriate time, the instant action shall be reopened so that judgment or other proceedings may be entered therein.

SO ORDERED. This the 27 day of March, 2014.

James C. Fox
JAMES C. FOX
Senior United States District Judge